UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COMBAT ZONE CORP., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-CV-774 |
| | § | |
| DOES 1-192, | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

This matter is before the court on two John Doe defendants' (Defendants) Motions to Sever and Quash or Modify Subpoena. (Dkt. 9, 11). Both motions have been referred to this magistrate judge for disposition. (Dkt. 10, 15) The court now grants the motions to sever, denies the motions to quash, and denies the motions for protective order.

## Background

On March 13, 2012, Combat Zone Corp. (Combat) filed a complaint against 192 unnamed Doe defendants identified only by their Internet Protocol (IP) addresses. Combat alleges that the defendants infringed its copyright for the adult video "Naughty Spanish Maids #2" (Video) by downloading the video illegally through the use of a BitTorrent protocol. On March 26, 2012, Combat filed for expedited

discovery seeking identifying information from the Internet Service Providers (ISPs) that are associated with the IP addresses. The motion was granted by District Judge David Hittner the following day. (Dkt. 5). Defendants received notice of Combat's efforts to gain their identifying information from their respective ISPs. Defendants then filed these motions.

Combat seeks expedited discovery while Defendants seeks to sever themselves out or quash the subpoena. This case is similar to many others filed around the country. *See Hard Drive Prods., Inc. v. Does 1-59*, CIV.A. H-12-0699, 2012 WL 1096117, at *1 (S.D. Tex. Mar. 30, 2012). Based on the pleadings, this court will grant Defendants' motions to sever, deny the motions to quash, and deny the motions for protective order.

## Analysis

Rule 20(a) permits the joinder in a single action of all persons defending against a joint, several, or alternative right to relief that arises out of the same transaction, occurrence, or series of transactions or occurrences and presents a common question of law or fact. FED. R. CIV. P. 20(a). "However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, . . . ensuring judicial economy, . . . safeguarding

principles of fundamental fairness," or trial convenience. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (internal citations omitted); *Gates v. L.G. DeWitt, Inc.*, 528 F.2d 405, 413, *modified per curiam*, 532 F.2d 1052 (5th Cir. 1976) ("[Rule 20(a)], which provides that judgment may be entered against one or more defendants according to their respective liabilities, concerns joinder of parties and is a procedural rule based on trial convenience."). If the Court finds joinder to be inappropriate, it may not dismiss the action. FED. R. CIV. P. 21. "The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right." *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972), *cited in Acevedo*, 600 F.3d at 522.

Combat contends that its swarm joinder[1] theory satisfies Rule 20(a)'s two

---

[1] The BitTorrent swarm process has been described as follows:

> In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading

prong test. The courts across the country are divided on the issue. *See K-Beech, Inc. v. John Does 1-41*, CIV.A. V-11-46, 2012 WL 773683, at *2-3 (S.D. Tex. Mar. 8, 2012) (discussing cases on both sides of the swarm joinder issue). This court assumes *arguendo* that Combat's swarm joinder theory satisfies Rule 20's transaction test but, nonetheless, finds joinder inappropriate for the reasons set forth below.

First, the joinder of 192 unnamed Doe defendants has already caused unnecessary delay. As of October 11, 2012, Combat has only received records for approximately 75 Does—less than 40 percent of the unnamed Does currently joined in this suit.[2] Combat has not sought to amend its complaint to name any of these subscribers as defendants in the suit. Given those circumstances, the Does face the real prospect of having a lawsuit looming over their heads for an indeterminate period of time; such delay is in direct opposition with the spirit of Rule 20. *See* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND

---

> data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects form [sic] the swarm or the BitTorrent client otherwise does the same.

*Diabolic Video Prods., Inc. v. Does 1-2099*, 2011 WL 3100404, at *1-2 (N.D. Cal. May 31, 2011).

[2] In Plaintiff's motion to extend time for case management conference (Dkt. 28), Combat indicated that it had not yet received records for 60 of the 95 Doe defendants. However, in the case management conference held October 11. 2012, Combat's counsel indicated that the Time Warner records, which concern 30-40 Does, have now been received.

PROCEDURE §1652 (3d ed. 2001) ("The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.").

Next, even if Combat ultimately names all 192 Does as defendants, the trial may well prove to be unworkable. As one court has explained:

> [E]ven though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings—a significant burden when, as here, many of the defendants will be appearing *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition—creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable—with each of the [192] Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

*Hard Drive Prods., Inc. v. Does 1-188*, 2011 WL 3740473, at *14 (N.D. Cal. Aug. 23, 2011). There is no indication that this case will proceed differently than the case described above.

Combat argues that the filing of 192 separate cases will cause a burden on the district and stand in direct opposition with the tenet of judicial economy. While

Combat's judicial economy argument has some force, this Court cannot simply ignore the tactics that similarly situated plaintiffs have used to the detriment of defendants and the court alike. *See Mick Haig Prods. E.K. v. Does 1–670*, 687 F.3d 649, 652 (5th Cir. 2012) (describing "strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars"); *Raw Films, Ltd. v. Does 1–32*, 2011 WL 6182025, at *3 (E.D. Va. Oct. 5, 2011) ("This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits."), *cited in Mick Haig Prods. E.K.*, 687 F.3d at 652 n.2.

In light of (1) the potential for abuse from similar litigation tactics as described in *Mick Haig Prods. E.K.* and other cases, (2) the prospect of undue delay, and (3) the strong likelihood of an unworkable trial, this Court finds that the balance of factors

identified in *Acevedo* and *Gates* outweighs Combat's argument in favor of judicial economy.

Finally, Combat will not suffer undue prejudice if severance is granted. Under 17 U.S.C. § 507, the statute of limitations of a civil copyright action is three years after the claim accrues. The earliest copyright infringement identified by Combat occurred in December of 2011. (Dkt. 1, at Ex. A). Combat has ample time to file individual lawsuits against each severed defendant should it desire to do so.

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1) All defendants except for the two John Doe defendants, known only as IP addresses 71.252.200.149 and 98.200.70.162, are hereby **SEVERED** from this action;

(2) Additionally, Plaintiff is **ORDERED** to show cause as to why the claims against the 190 remaining Doe Defendants should not be completely dismissed.

Signed at Houston, Texas on October 12, 2012.

Stephen Wm Smith
United States Magistrate Judge